**Albert HAUYTIN, Plaintiff,**

*v.*

**Jack Jakob GRYNBERG, aka Grynberg and Associates, Defendant.**

**Adv. No. 82 M 0420.**

United States Bankruptcy Court, D. Colorado.

Aug. 26, 1985.

Glicksman, Woodrow & Shaner by Daniel L. Woodrow, and Edward H. Sherman, Denver, Colo., for plaintiff.

Lohf and Barnhill, P.C. by Ernest Lohf, Denver, Colo., for Jack Jakob Grynberg.

Law & Scheid by William Scheid, Denver, Colo., for Celeste Grynberg.

## MEMORANDUM ORDER RE: MOTION FOR TRANSFER OF ACTION TO UNITED STATES DISTRICT COURT

JAY L. GUECK, Bankruptcy Judge.

THIS MATTER is before the Court on the plaintiff's Motion for Transfer of Action to United States District Court. The action sought to be transferred involves issues initially brought in the state district court for the City and County of Denver, State of Colorado, wherein a request for jury trial was made in the initial Complaint filed in that court. The procedural history of this matter is somewhat unusual and requires brief description.

On January 14, 1977, Hayutin commenced a civil action in the district court in and for the City and County of Denver, Colorado, against Jack Grynberg and his wife, Celeste C. Grynberg. While that action was pending, each of the defendants filed separate Chapter 11 petitions on February 20, 1981. Upon commencement of these cases, the automatic stay imposed by § 362(a) of the Bankruptcy Code took effect.

On July 14, 1981, Judge Clark, of this court, granted relief from the automatic stay, allowing Hayutin to proceed in the Denver action. This was accomplished in Adversary No. 81 C 1113. While that order authorized Hayutin to proceed to judgment in the Denver action, it also provided that if any judgment were obtained in that action, no execution should be accomplished without further order of the bankruptcy court. It was, apparently, the intent of the parties to liquidate the Hayutin claim in the Denver District Court.

Proofs of claim were filed by Hayutin on July 30, 1981 in both Chapter 11 cases. These proofs of claim were in the amount of $11,500,000.00 and were asserted as contingent, disputed claims which were pending in the Denver action.

The substance of the action as originally alleged in the Complaint in Denver, was based upon an alleged conversion by Jack and Celeste Grynberg of one million shares of stock issued by Oceanic Exploration Company, for which Hayutin sought $10,000,000 in damages. Additionally, Hayutin sought enforcement of an alleged guarantee by the Grynbergs of payment by Oceanic of a $1,500,000 commission which Hayutin claimed in connection with a sale of assets of Oceanic to Dennison Mines, Ltd., which had occurred in August, 1976. Hayutin's claims were denied by the Grynbergs, who asserted various affirmative defenses to Hayutin's action. The proofs of claim were presumably filed to perfect Hayutin's right to receive a distribution from the bankruptcy estates should he receive a favorable judgment in the Denver action.

Following entry of the relief from automatic stay, litigation of the controversies resumed in the state district court. In addition, various overlapping issues were litigated or compromised in this court. In early 1982, both debtors were moving forward toward confirmation of their joint plan of reorganization. As part of that process, the debtors filed objections to numerous claims and requested that certain claims be estimated under 11 U.S.C. § 502(c). Objections to Hayutin's claims were filed in both debtor's cases on January 18, 1982. However, the objections requested that action by the bankruptcy court be abated pending resolution of the action pending in the Denver District Court. A trial date had been set for February 1, 1982, in the Denver action. On January 25, 1982, the parties to the Denver action entered into a joint motion for continuance in that case. The basis for the motion for a continuance was that the parties had entered into serious settlement negotiations which needed to be presented to the creditors' committee in the bankruptcy court. The parties then agreed that the plaintiff would make application for removal of the Denver action to the bankruptcy court or would institute an original adversary proceeding for trial to a jury in the bankruptcy court which, if approved by the bankruptcy court, would terminate any proceedings in the Denver district court. The matter was only to be reset in the event the

bankruptcy court refused to assert jurisdiction over the controversy.

The application for removal was filed on February 24, 1982, along with a motion to strike a hearing set on the objection to claims and application for estimation of claims which had been previously filed.[1] The application for removal had the immediate effect of removing the cause of action from the Denver district court. B.R.P. 9027(d). The instant adversary proceeding was opened for the removed Denver action. No motion for remand has ever been filed.[2]

The motion to strike the hearing set on objections to claims stated that the Denver action was removed to be tried in the bankruptcy court as an adversary jury trial and requested that the bankruptcy court proceed with the entire matter only as an adversary proceeding.

I find no order dealing with the motion to strike. However, on March 4, 1982, then-bankruptcy judge Moore held a hearing on the objections to Hayutin's claims. Thereafter, on March 12, 1982, Judge Moore issued an Order on Motion for Summary Judgment and Objections to Claims, at which time, summary judgment was granted in favor of Celeste Grynberg disallowing all of Hayutin's claims against her. A Motion for Summary Judgment filed by Jack Grynberg as to Hayutin's claims for conversion and unlawful retention of the value of one million Oceanic shares was denied, but the Motion for Summary Judgment based upon debtor's alleged oral guarantee of any obligation by way of a finder's fee to Hayutin was granted in favor of the debtor. The maximum value of Hayutin's remaining claims against the debtor was valued by Judge Moore at $4,200,000.

The Order of March 12, 1982, relating to summary judgment was appealed to the U.S. District Court. One of the issues on appeal was whether Hayutin was denied his constitutional right to a jury. By an Order dated October 6, 1982, the district court affirmed the bankruptcy court on the grant of summary judgment in favor of Celeste Grynberg and dismissed the appeal as to the partial summary judgment in favor of Jack Grynberg, pending a final ruling. The district court's Order did not address the issue of whether Hayutin was entitled to a jury in his claim against Jack Grynberg.

Both the adversary proceeding and the objections to claims have remained relatively dormant following the appeal. No trial date has been set on the remaining claims which Hayutin has asserted against Jack Grynberg. A joint plan of reorganization has been confirmed which, in substance, provides for payment of disputed claims, such as those asserted by Hayutin, upon allowance thereof after final resolution of all pertinent disputes, whether in this court or in any other forum.

The motion before me was filed after passage of the Bankruptcy Amendments and Federal Judgeship Act of 1984, and is based upon the proposition that the bankruptcy court no longer has jurisdiction to conduct jury trials and that the plaintiff wishes to have all remaining issues in this case tried to a jury.[3] Briefs have been filed and the court has reviewed copies of the pleadings filed in the Denver district court. The issues relating to appropriateness of a jury trial of the issues herein involved, whether in this or any other court, has been researched. The following is the analysis and ruling resulting from that review.

1. There is some question with respect to the timeliness of filing the application for removal. However, that matter is not the subject of any controversy presently before me.

2. The proper procedure for calling irregularities in the application for removal to the attention of the court is by motion for remand made to the federal court. *See* Wright, Miller and Cooper, *Federal Practice and Procedure: Jurisdiction*, § 3739, p. 760 (1976).

3. While the motion refers to the lack of jurisdiction to conduct a jury trial pursuant to the "Emergency Bankruptcy Rule", the issue will be determined under the 1984 Bankruptcy Amendments and Federal Judgeship Act.

## LEGAL ANALYSIS AND RULING

The questions to be determined here are whether the parties have the right to a trial by jury on the issues herein presented and, if so, whether the bankruptcy court has jurisdiction to conduct jury trials under the 1984 Bankruptcy Amendments and Federal Judgeship Act.

Regardless of whether this court has the authority to hear jury trials, it still possesses the power to determine whether there is a right to trial by jury. B.R.P. 9015(b)(3). *See e.g., Pereira v. Checkmate Communications Co., Inc., (In re Checkmate Stereo & Electronics, Ltd.)* 21 B.R. 402 (U.S.D.C. E.D.N.Y.1982). Such a determination is especially appropriate when the consequence of an affirmative determination is the immediate or ultimate transfer of the proceeding to the district court. *Matter of Paula Saker & Co.,* 37 B.R. 802 (Bankr.S. D.N.Y.1984).

▆ Prior to passage of the Bankruptcy Amendments and Federal Judgeship Act of 1984, the starting place for analysis of the right to a jury trial in bankruptcy court had been 28 U.S.C. § 1480. I have previously concluded that § 1480 did not survive the 1984 Act. *Bokum Resources Corp. v. Long Island Lighting Co., (In re Bokum Resources Corp.)* 49 B.R. 854, (Bankr.N.M. 1985). Section 1480 was contained in the Bankruptcy Reform Act of 1978. The 1984 Act amended § 402(b) of the Bankruptcy Reform Act to provide *inter alia,* that the amendments to Title 28 contained in the Bankruptcy Reform Act (including § 1480) would not become effective. P.L. 98–353, § 113. The 1984 Act then substituted 28 U.S.C. § 1411(a) to provide for jury trials. It is my conclusion, however, that § 1411(a) does not apply to this action, inasmuch as P.L. 98–353, § 122(b) provides that § 1411(a) of Title 28 shall not apply with respect to cases under Title 11 that are pending on the date of enactment of the 1984 Act (July 10, 1984) or to proceedings arising in or related to such cases. The bankruptcy petitions in the underlying proceedings were filed on February 20, 1981.

The controlling authority would, therefore, be B.R.P. 9015(a), which provides: "(a) **Trial by Jury.** Issues triable of right by jury shall, if timely demanded, be by jury, unless the parties or their attorneys of record, by written stipulation filed with the court or by an oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury."

The right to a jury trial appears to emanate from two possible sources: The Seventh Amendment to the U.S. Constitution, or a statute. *Sibley v. Fulton DeKalb Collection Service,* 677 F.2d 830 (11th Cir. 1982).

I have found no statutes which would entitle Hayutin to a jury as a matter of right. Thus, any right which Hayutin may have to a trial by jury would be derived from the Seventh Amendment to the U.S. Constitution.

The Seventh Amendment test is an historical one. If the issue would have been tried in the courts of equity, there is no right to a jury. However, if such issue would have been tried in a court of law, there is the right to a jury trial. *See, generally:* Wright and Miller, *Federal Practice and Procedure,* § 2302, p. 15 (1971). Under the former Bankruptcy Act, matters over which the bankruptcy courts had jurisdiction (*i.e.* summary proceedings) were equitable issues and no jury right attached. *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *In re Merril,* 594 F.2d 1064 (5th Cir.1979). Bankruptcy courts are historically courts of equity. *In re Hause,* 10 B.R. 628 (Bankr.Mass.1981); *see also, In re Beery,* 680 F.2d 705 (10th Cir.1982). They do not generally have jurisdiction over plenary proceedings. In those types of proceedings, the nature of the issue determined if a jury right existed.

The legal/equitable distinctions which affect a right to a jury trial were thoroughly discussed in *Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). There, the Supreme Court stated that the Seventh Amendment test depends on the

nature of the issue to be tried rather than the character of the overall action and set forth three factors to be applied in determining whether the nature of the claim is legal or equitable: "first, the pre-merger custom with reference to such questions; second, the remedy sought; and, third, the practical abilities and limitations of juries. Of these factors, the first, requiring extensive and possibly abstruse historical inquiry, is obviously the most difficult to apply." *Id.* at p. 538, note 10, 90 S.Ct. at 738, note 10.

Justice White, writing for the majority in *Bernhard,* also referred to Justice Holmes' decision in *Fleitmann v. Welsbach Street Lighting Co.,* 240 U.S. 27, 36 S.Ct. 233, 60 L.Ed. 505 (1916), for the proposition that "legal claims are not magically converted into equitable issues by their presentation to a court of equity in a derivative suit." *Ross v. Bernhard, supra,* 396 U.S. at p. 538, 90 S.Ct. at p. 738.

The issues presently before me are in no way involved with a derivative suit. Nevertheless, the question with which I must now wrestle is whether otherwise legal claims between these parties are converted into equitable issues where one party has filed bankruptcy and the other has filed a proof of claim to perfect a right to distribution in the event it prevails in its legal action—because the Congress has declared in 28 U.S.C. § 157(b)(2)(B) that allowance or disallowance of claims against the estate is a core (equitable) proceeding.

The issues before me arise as a result of the plaintiff's removal of causes of action which form the basis for plaintiff's proof of claim in the bankruptcy case. The claims relate to proceeds of sale of shares of Oceanic stock claimed to be held in constructive trust, together with the debtor's objections to remaining claims not previously disposed of in summary judgment. These are claims to property over which the bankruptcy court has jurisdiction. Traditionally, the bankruptcy court had summary jurisdiction over property in its actual or constructive possession. *Thompson v. Magnolia Petroleum Company,* 309 U.S.

478, 60 S.Ct. 628, 84 L.Ed. 876 (1940); *Cline v. Kaplan,* 323 U.S. 97, 65 S.Ct. 155, 89 L.Ed. 97 (1944). Further, under the former Bankruptcy Act, the allowance or disallowance of claims was a summary proceeding over which no jury right attached. *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *In re Merril,* 594 F.2d 1064 (5th Cir.1979).

While Justice Brennan served notice that *Katchen v. Landy,* may yet be subject to further scrutiny, *see Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982 [fn. 31] ), it is still the law. Were it not for bankruptcy, these issues may be triable in state court to a jury. But "when the same issue arises as part of allowance and disallowance of claims, it is triable in equity." *Katchen v. Landy, supra,* 382 U.S. at p. 336, 86 S.Ct. at p. 476. Proceedings in bankruptcy are inherently proceedings in equity. *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). The provisions of 28 U.S.C. § 157(b)(2)(B) continue to recognize this doctrine. Additionally, these claims arise under 11 U.S.C. § 502 and arise in the Title 11 case in that resolution of the issues will impact upon property of the estate.

■ I conclude that these are core proceedings arising under Title 11 and arising in the Title 11 case referred by the district court to this court.

■ The conclusion that Hayutin is not entitled to a jury as a matter of right is not dispositive of the issues in this matter. The Stipulation continuing the trial date in the Denver action and the removal of that action to this Court were pursuant to the understanding that both parties consented to a trial by jury, although Grynberg appears to attempt to withdraw his consent in his resistance to transfer of this action to the United States District Court. Under B.R.P. 9015(e), the bankruptcy court, on motion or on its own initiative, may try any issue with an advisory jury in actions not triable of right by jury. This is discretionary with the court. *In re First Financial*

*Group of Texas, Inc.,* 11 B.R. 67 (S.D.Texas 1981).

I have already concluded that the matters to be tried here are core proceedings in this court, although the same issues might well have been triable to a jury in the state court. *See Katchen v. Landy, supra.* Hayutin voluntarily removed this action from the state court to this court, where no jury right exists with respect to summary proceedings. An advisory jury, even if we have the authority to conduct such, under General Procedure Order 1984–3, in light of B.R.P. 9015(e), would only serve as a time consuming device to protract the summary litigation which it is this court's responsibility to resolve.

█ It appears to be within the discretion of the trial court to allow or disallow a jury under the circumstances presented herein. *See Paramount Pictures Corp. v. Thompson Theaters,* 621 F.2d 1088 (10th Cir.1980). Further, I conclude that bankruptcy courts have the power to exercise such discretion regardless of their power to conduct the jury trial, itself. B.R.P. 9015(b)(3). *See, also, Matter of Paula Saker & Co.,* 37 B.R. 802 (Bankr.S.D.N.Y. 1984).

Based upon the foregoing authority and discussion, as well as the facts in this case, I hereby decline to grant a jury trial in this matter. It is therefore ordered that plaintiff's motion for transfer of this proceeding to the U.S. District Court, which would be by recommending that the U.S. District Court withdraw its reference, is denied.