In re SCHEMPP REAL ESTATE, LLC, Ein: 06–1671237, Debtor.

Lucre Management Group, LLC and Richard L. Rollings, Plaintiffs,

v.

Schempp Real Estate, LLC, Defendant.

Bankruptcy No. 03–25068–ABC.

Adversary No. 03–1927 HRT.

United States Bankruptcy Court, D. Colorado.

Dec. 19, 2003.

Douglas C. Pearce, II, Broomfield, CO, for Debtor/Defendant.

Richard A. Marsh, Longmont, CO, for Plaintiff.

### ORDER ABSTAINING FROM JURISDICTION AND REMANDING TO STATE COURT

HOWARD R. TALLMAN, Bankruptcy Judge.

#### Background and Procedural Posture

On November 17, 2003, the Court held a final hearing on the Notice of Removal of State Court Civil Action filed by Schempp Real Estate, LLC (the "Debtor"); its Motion To Amend Answer and Counterclaims; the Objection to Notice of Removal, the Motion to Remand and/or to Abstain, and other objections filed in response by Lucre Management Group, LLC ("Lucre"), and its principal Richard L. Rollings ("Rollings", collectively the "Plaintiffs"); and, the Debtor's Response in Opposition thereto.

These matters are the continuation of state court litigation between these or related parties that has been ongoing in one form or another since at least 1998. For the hearing, the parties have filed a rather detailed Stipulation of Facts, which serves as the primary basis for the Court's ruling. In addition, either or both parties invited the Court to take judicial notice of the case file in the underlying state court litigation and of the chapter 11 case filed by Lucre pending in this Court as Case No. 01–27468–EEB. This file review has required significant time by the Court, in addition to its ongoing work in other cases, and resulted in a delayed ruling. The relevant history for purposes of this ruling may be summarized as follows.

In 1998, Hans Schempp (the individual) filed suit against Lucre Management Group in Adams County alleging, inter alia, fraudulent transfer claims. Schempp lost at trial and the trial court was eventually affirmed on appeal.

Compass Bank held a note and deed of trust on real estate belonging to Lucre and in October, 2001, Compass initiated a foreclosure action and filed suit on the note. That real estate now consists of 8 office condos in Adams County valued in the Debtor's schedules at $1.425 million ("Real Estate").

In response to Mr. Schempp's suit and Compass' foreclosure action, Lucre filed a chapter 11 case on December 4, 2001. The Court's review of Lucre's bankruptcy schedules indicates that Mr. Schempp's claims were listed as contingent, unliquidated and disputed on Lucre's Schedule F. The then pending fraudulent transfer litigation involving the parties was also listed in answer to Question 4 of Lucre's Statement of Financial Affairs.

Mr. Schempp formed the Debtor LLC on or about December 15, 2001, of which Schempp is the only member. Debtor purchased the note and deed of trust from Compass. The Debtor obtained a lift of stay in Lucre's chapter 11 case and resumed the foreclosure and the note suit. Thereafter, Lucre voluntarily dismissed its chapter 11 on June 13, 2002. The Debtor bought the Real Estate at the subsequent foreclosure sale and received a deed on December 2, 2002. The note action is pending and is set for trial on January 8, 2004. To the Court's knowledge, that action is not stayed.

On August 22, 2002, Lucre and its principal, Rollings, filed this, now removed, action in Adams County designated by that state court as Case No. 02 CV 2076 (the "Removed Action"). These Plaintiffs later amended their original complaint to

add two other claims. Lucre/Rollings have also placed a *lis pendens* on the Real Estate. Discovery has occurred to some extent in the Removed Action and a summary judgment motion was filed by Debtor and denied. It appears that the Removed Action is postured for a jury trial and Plaintiff claims that it can get a date for a 5 day trial within the next 11 months.

The Debtor filed its own chapter 11 case on August 1, 2003, pending as Case No. 03–25068–ABC. The Debtor filed its Notice of Removal on September 12, 2003. The Court conducted a preliminary hearing on this matter on October 28, 2003, and set the final hearing for November 17, 2003, at that time.

This Removed Action alleges generally that Hans Schempp is the alter ego of the Debtor and that Schempp's actions, including an improper use of *lis pendens* during the previous fraudulent transfer litigation, clouded the title to the 8 office condo units such that Plaintiff Lucre could not sell units and generate cash-flow to service its mortgage debt. It includes causes of action for 1) abuse of process; 2) interference with contract; 3) slander of title; 4) breach of agreement; and claims added by amendment for 5) interference with equity of redemption; and 6) constructive trust.

The Debtor has asserted counterclaims in that action for: 1) breach of contract, breach of fiduciary duty and conversion; 2) malicious prosecution; 3) abuse of process; and 4) slander of title. In this Removed Action, Debtor has moved to amend its Answer to add counterclaims: 1) under § 544 to avoid the Plaintiffs' filing of a *lis pendens* on the Real Estate, which now clouds the Debtor's ability to sell all or some of the condos; 2) under § 544 to avoid any asserted constructive trust in the Real Estate; and 3) declaratory judgment that Lucre and Rollings hold no interest in the Real Estate.

Through removal, the Debtor seeks to have these issues heard by this Court on the grounds that they are core matters dealing with the Debtor's only asset(s) and Lucre's claims against them. Lucre/Rollings request that the Court abstain from hearing these matters and to remand the litigation back to state court.

### *Discussion*

A. Mandatory Abstention:

Lucre and Rollings assert that this Court must mandatorily abstain from hearing the removed action. The Debtor argues that mandatory abstention is not available in this case. The elements of mandatory abstention are found in 28 U.S.C. § 1334(c)(2), and have been described as follows:

> A district court must abstain if the following six requirements are satisfied: (1) A party files a timely motion; (2) the proceeding is based on a state law claim; (3) the proceeding is a "related to" proceeding; (4) there is no basis for federal jurisdiction other than section 1334; (5) an action is pending in state court; and, (6) the state court action can be timely adjudicated.

*Personette v. Kennedy (In re Midgard Corp.)*, 204 B.R. 764, 776–78 (10th Cir. BAP 1997); *In re Rarick*, 132 B.R. 47, 50 (D.Colo.1991).

#### 1. *Timely Motion of a Party*

The Court finds that Lucre's Motion was timely. The case was removed on September 12, 2003. On September 23, 2003, Plaintiffs filed an objection to removal, but that objection did not specifically argue for abstention. On September 22, 2003, this Court set a hearing on removal establishing a deadline of October 22, 2003 to file objections or responses. The Plaintiffs filed a formal motion for abstention or

remand on October 22, 2003, within the time set by the Court.

### 2. Proceeding Based on State Law Causes of Action

All the claims previously enumerated above that were pled in the state court action are based on state law. All the counterclaims asserted by Debtor prior to filing its Notice of Removal, are based on state law. The Debtor filed a Motion to Amend its Answer when it filed the Notice of Removal, seeking to add counterclaims based on Bankruptcy causes of action, but that does not change the nature of the existing case.

### 3. Matters "Relate to" But Causes of Action Do Not "Arise Under" Title 11 Case

■ None of these state law causes of action "arise under" title 11. But, they are "related to" this title 11 case because they do affect the Debtor's primary asset, the Real Estate. The Debtor's motion to add § 544 counterclaims seeks to take this matter out of the "related to" category and into the "arising under" category. However, the Court's determination on the abstention issue must be made based on the current posture of the case. *Kidd v. Southwest Airlines Co.,* 891 F.2d 540, 546 (5th Cir.1990) ("In most cases, federal courts base decisions about subject matter jurisdiction after removal on the plaintiff's complaint as it existed at the time that the defendant filed the removal petition.").

■ This factor or element raises issues concerning this Court's jurisdiction over "core" versus "non-core" matters. "Bankruptcy courts are courts of limited jurisdiction." *Lacy v. F.D.I.C. (In re Lacy),* 183 B.R. 890, 892 (Bankr.D.Colo.1995). They "have only the jurisdiction and powers expressly or by necessary implication granted by Congress" *Gardner v. U.S. (In re*

*Gardner),* 913 F.2d 1515, 1517 (10th Cir. 1990) (citing *Johnson v. First Nat'l Bank,* 719 F.2d 270, 273 (8th Cir.1983)). Congress has given jurisdiction to the district courts as follows:

> Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have *original but not exclusive jurisdiction* of all civil proceedings *arising under title 11,* or *arising in* or *related to* cases under title 11.

28 U.S.C. § 1334(b)(1) (emphasis added). The district courts may, in turn, refer certain cases to the bankruptcy judges who may enter final orders in title 11 cases and core proceedings:

> Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district.

28 U.S.C. § 157(a).

> Bankruptcy judges may hear and determine *all cases under title 11* and *all core proceedings arising under title 11, or arising in a case under title 11,* referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157(b)(1) (emphasis added). But, lacking consent of the parties, a bankruptcy judge may not enter final orders in non-core proceedings:

> (1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the dis-

trict judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157(c).

Accordingly, "[u]nder this jurisdictional scheme, there is a universe of four categories of cases and proceedings:

A. A case under Title 11;

B. A civil proceeding arising under Title 11;

C. A civil proceeding arising in a case under Title 11;

D. A civil proceeding related to a case under Title 11."

*In re S.E. Hornsby & Sons Sand and Gravel Co., Inc.* 45 B.R. 988, 994 (Bankr. M.D.La.1985). "The core/non-core dichotomy applies only to proceedings arising under Title 11 or arising in a case under Title 11." *Id.*

 Since core proceedings are defined as those which arise under title 11 or arise in a case under title 11, they "are proceedings which have no existence outside of bankruptcy. Actions which do not depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings." *Gardner v. U.S. (In re Gardner),* 913 F.2d 1515, 1518 (10th Cir.1990) (citations omitted); *see, also, Personette v. Kennedy (In re Midgard),* 204 B.R. 764, 771–71 (10th Cir. BAP 1997). "[T]he touchstone would seem to be whether the case has a 'life of

its own in either state or federal common law or statute independent of the federal bankruptcy laws.' If it does, it is not a 'core proceeding'; if it does not, it is." *In re Marine Pollution Service, Inc.,* 88 B.R. 588, 596 (S.D.N.Y.1988) *rev'd on other grounds by* 857 F.2d 91 (2nd Cir.1988) (quoting *In re Kaiser,* 722 F.2d 1574, 1582 (2nd Cir.1983)). Thus, by definition, this case, which was initiated in state court prior to the existence of a bankruptcy case, is not a core proceeding because it did not arise under title 11 or in a case under title 11.

 Litigants cannot create core jurisdiction that does not otherwise exist. A case which has been commenced in state court is, by definition, a non-core proceeding (at best, "related to") because "[a]ctions ... which could proceed in another court are not core proceedings." *In re Gardner,* 913 F.2d at 1518. The Court's remand analysis must focus on the case as it was postured at the time of removal, so whether or not the debtor has counterclaims that may be stated as § 544 actions, has no relevance to the character of the Court's jurisdiction or whether remand is appropriate. *Kidd,* 891 F.2d at 546.

Here, the Debtor argues for a broad, expansive definition of what is core, under which almost any dispute involving an asset or a liability would fit into it. But, the Court believes the Debtor's definition does not comport with the above cited statutes and case law.

### 4. No Basis for Federal Jurisdiction Other Than 28 U.S.C. § 1334

This action could not have been commenced in federal court absent the commencement of the case under title 11. Schempp Real Estate, LLC, Lucre Management Group, LLC, and Rollings are all Colorado citizens. Mr. Schempp is not a Colorado citizen, but he is not a named

party. Thus, there could have been no diversity jurisdiction in this case. Because the Removed Action presents only state law issues, there could be no jurisdiction based upon a federal question.

All of the causes of action are state court causes of action. The Debtor is attempting to confer federal jurisdiction by moving to amend its Answer to add counterclaims under § 544 and a declaratory judgment to determine its rights in the property. But, those added counterclaims seek to adjudicate the interests of these parties to the Real Estate. That was already at issue in the state court with respect to the Plaintiff's constructive trust claim.

As previously discussed, Debtor is now attempting to recast the dispute as one which involves core matters under 28 U.S.C. § 157(b)(2): a § 157(b)(2)(B) claims objection; a § 157(b)(2)(H) catchall avoidance action; or a § 157(b)(2)(O) proceeding affecting the liquidation of assets. But such recharacterization does not change the fact that this dispute is one which stands on its own outside of this chapter 11 bankruptcy case. Therefore, the Court concludes that there is no basis of federal jurisdiction absent the bankruptcy filing.

### 5. Action Pending in State Court

This Removed Action has been pending in state court for over 15 months. Clearly, this factor is satisfied.

### 6. Action Can Be Timely Adjudicated in State Court

The primary focus of the timeliness prong is whether allowing the case to stay in state court will adversely affect the bankruptcy case. "In considering whether allowing a case to proceed in state court will adversely affect the administration of a bankruptcy case, courts have considered some or all of the following factors: (1) backlog of the state court and federal court calendar; (2) status of the proceeding in state court prior to being removed (i.e., whether discovery had been commenced); (3) status of the proceeding in the bankruptcy court; (4) the complexity of the issues to be resolved; (5) whether the parties consent to the bankruptcy court entering judgment in the non-core case; (6) whether a jury demand has been made; and (7) whether the underlying bankruptcy case is a reorganization or liquidation case." *Personette v. Kennedy (In re Midgard)*, 204 B.R. 764, 778–79 (10th Cir. BAP 1997).

#### a. Backlog of State and Bankruptcy Court Calendars

Plaintiff's counsel has represented to the Court, without contradiction by the Debtor, that a state court trial date is available within 9–11 months. Debtor's mention of a three-year time frame appears to include time needed for any appellate process to be completed. Given the present high case volume of this Court, the case would be unlikely to receive a more timely hearing in bankruptcy court.

#### b. Status of Proceeding in State Court

The state court has already held a number of hearings to consider arguments and, as necessary, evidence presented by the parties concerning the many procedural and substantive disputes that have seemingly plagued this case at every stage. Discovery appears to have taken place to some extent, as necessary to prepare for those hearings. The fact that discovery may have not progressed any further appears to be largely the result of the parties themselves and their fighting at every opportunity. Under these circumstances, the case appears capable of being ready for trial in state court sooner than it would

with this Court starting the matter over from scratch.

### c. Status of Proceeding in Bankruptcy Court

This chapter 11 case is brand new. This Court would need to come up to speed on at least four to five years of hard fought, contentious litigation history between these warring factions.

### d. Complexity of the Issues

There is a relatively long case history, and the issues don't seem to be that complex. But, in the main, those issues involve state law issues.

### e. Parties' Consent to Bankruptcy Court Entering a Judgment on Non-core Issues

Plaintiffs specifically do not consent. As a result, this Court cannot issue a final order in this litigation and could only make recommended findings of fact and proposed conclusions of law. 28 U.S.C. § 157(c). Therefore, final resolution of this matter in bankruptcy court would also require the involvement of the U.S. District Court to review the bankruptcy court's handling of the case, *de novo*. Given the history of disputes between these parties, the Court is not optimistic that this double review process will go smoothly. There have already been appeals in these litigation matters in the state courts, and nothing dissuades this Court that the same would not happen in the federal courts.

### f. Jury Demand

The state court case is docketed as a jury trial based on the Debtor's request. The Debtor is willing to waive that request, if the matter can be tried in the bankruptcy court. However, seeking to find a friendlier forum or a "home court"

advantage does not change the fact that such an original demand was made.

### g. Whether the Underlying Bankruptcy is a Reorganization or Liquidation

By the Debtor's own admission, this chapter 11 case appears to be a liquidation. The Debtor admits it was formed for the purpose of foreclosing on the Lucre commercial condominium complex and selling the units.

Thus, as to the timeliness element of the statute, the preponderance of the factors considered persuades the Court that this matter is unlikely to be more swiftly adjudicated in this forum if the Court were to retain jurisdiction over it and, in any case, retention of jurisdiction in the state court will have no adverse affect on the administration of this chapter 11 case.

Based upon the foregoing analysis, the Court finds that all of the elements of 28 U.S.C. § 1334(c)(2) requiring this Court to abstain from hearing this litigation have been satisfied. The Court finds that 1) a timely motion to remand was made; 2) the Removed Action is based entirely on state law claims; 3) the Removed Action is not a core matter, but is only "related to" the chapter 11 case; 4) absent bankruptcy jurisdiction, there is no basis for federal jurisdiction over the Removed Action; 5) the action was pending in state court prior to its removal; and 6) the state court action can be timely adjudicated in that forum. However, even if the Court were not required to abstain from hearing this matter, this case is an appropriate one for the Court to exercise its discretion to abstain.

### B. Discretionary Abstention

In a case where a court is not required to abstain under 28 U.S.C.

§ 1334(c)(2), it may use its discretion to abstain from hearing a case where the interest of the bankruptcy court in adjudicating a matter is outweighed by other factors.

> Nothing in this section [28 U.S.C. § 1334] prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

▉▉▉▉ Courts apply the following factors to a discretionary abstention analysis: (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

*In re Tucson Estates, Inc.,* 912 F.2d 1162, 1167 (9th Cir.1990) (citing *In re Republic Reader's Serv., Inc.,* 81 B.R. 422, 429 (Bankr.S.D.Tex.1987)); *see, also, Matter of Chicago, Milwaukee, St. Paul & Pacific R. Co.,* 6 F.3d 1184, 1189 (7th Cir.1993); *Broyles v. U.S. Gypsum Co.,* 266 B.R. 778, 785 (E.D.Tex.2001); *Official Comm. of Unsecured Creditors v. Elkins (In re Integrated Health Services, Inc.),* 291 B.R. 615, 619 (Bankr.D.Del.2003); *Federated Dept. Stores, Inc. v. White Flint LP (In re Federated Dept. Stores, Inc.),* 240 B.R. 711, 721 (Bankr.S.D.Ohio 1999); *Beneficial Nat. Bank v. Best Receptions Systems, Inc. (In re Best Reception Systems, Inc.),* 220 B.R. 932, 953 (Bankr.E.D.Tenn.1998).

### 1. *Effect or Lack Thereof on the Efficient Administration of the Estate*

This is a chapter 11 liquidation case. The Debtor believes it can achieve a more rapid resolution of these disputes in bankruptcy court. But, this Court has no reason to believe that the Removed Action will be resolved more quickly in this forum. Debtor was formed to buy the Compass note, foreclose and sell the Real Property. The Debtor LLC has advised this Court that it was not designed to operate the condo complex and does not have the cash flow or other funds to pay taxes and all operating expenses. Under such apparently desperate circumstances, it appears to make little difference if the case remains in bankruptcy court.

### 2. *Extent to Which State Law Issues Predominate*

The issues, as postured before the Notice of Removal, were completely state law based, and remain so. The Debtor has sought to raise counterclaims grounded in bankruptcy law causes of action, but as previously discussed, the Court does not find that these causes mandate the bankruptcy court to take over the litigation and displace the state court. In addition, the Debtor argues that Lucre should be judi-

cially estopped from alleging any claims against the Debtor. The Debtor asserts that Lucre did not list its claims against the Debtor on Lucre's Bankruptcy Schedules and therefore, the Debtor was unaware that Lucre had claims against it when the Debtor consented to the dismissal of Lucre's chapter 11 case. But, if that position has any validity, it may be argued in the state court.

### 3. *Difficulty or Unsettled Nature of the Applicable Law*

Many of the issues involve foreclosure and other real estate law that do not appear difficult or unsettled. However, the Court's review of the state court litigation file shows that the state court here has allowed the opportunity to present a case of "reverse piercing" of the corporate veil, which if successful, would possibly effect a change in Colorado law. The state courts should be permitted to address such an issue, if indeed, it is one of first impression.

### 4. *Presence of Related Proceedings Commenced in State Court*

The parties' joint Stipulation of Facts and the Removed Action case file show that there are other related nonbankruptcy proceedings pending between these and other parties in state court. It seems that such matters have been going on for several years.

### 5. *Jurisdictional Basis Other than § 1334*

As previously discussed, the Court finds there is none.

### 6. *Degree of Relatedness or Remoteness of Proceeding to Bankruptcy Case*

▮ The Court is fully aware that the Real Estate and the value of its potential counterclaims against Lucre are virtually the Debtor's only assets. But that does not control or trump the other factors. In many respects, this is a bankruptcy case in form only. This bankruptcy appears to be nothing more than an effort to enlist the resources of the bankruptcy court as yet another litigation tactic in a two-party dispute. The Debtor now seeks to remove a cloud from the title to its Real Estate in bankruptcy court, having been unsuccessful at doing so in state court. "Generally, bankruptcy is not favored as the means for resolving ... a two-party dispute." *In re Shady Grove Tech Ctr. Assoc. L.P.*, 216 B.R. 386, 391 (Bankr.D.Md.1998). "[A] court should not take jurisdiction over a two-party dispute, unless special circumstances exist." *In re Axl Industries, Inc.*, 127 B.R. 482, 484 (S.D.Fla.1991). "[T]he state court is the better forum for resolving most two-party disputes." *C–TC 9th Ave. Partnership v. Norton Co. (In re C–TC 9th Avenue Partnership)*, 113 F.3d 1304, 1312 n. 7 (2nd Cir.1997). Thus, under these circumstances, the fact that the subject matter of this adversary action involves the major assets of this bankruptcy estate does not require the assumption of jurisdiction by this Court.

### 7. *Substance Rather Than Form of an Asserted Core Proceeding*

The Debtor has sought to amend its Answer to add counterclaims under 11 U.S.C. § 544 (fraudulent conveyance) and for declaratory judgment regarding ownership of the property. Even though bankruptcy counterclaims are being asserted, they are the same issues that are pending in state court dressed up in a new form. Therefore, the substance of the alleged core matters is primarily that of state court causes of action, only now alleged in bankruptcy parlance.

## 8. Feasibility of Severing State Law Claims From Core Bankruptcy Matters

Since all of the claims involved are either non-core or present mixed issues of core and non-core matters, the state court can easily determine the interests of the parties. The Debtor's counterclaims and defenses can be affirmatively pled in state court. Based on that determination, the Debtor may or may not have assets to go forward with in this bankruptcy case, and further enforcement or other action by the bankruptcy court would be unnecessary.

## 9. Burden on Bankruptcy Court's Docket

Litigation of this matter in bankruptcy court would add some burden to this Court's already strained docket, given the record number of bankruptcy cases currently being filed in this district. The existing volume will likely not permit this Court and/or the U.S. District Court to determine this litigation any faster than the state court. While one individual case may not impose an intolerable burden on the Court's docket, the Court is reluctant to see its valuable resources diverted for use as a litigation tool in a two-party dispute of long standing.

## 10. Likelihood That Commencement of the Proceeding in Bankruptcy Court Involves Forum Shopping

This appears to be a forum shopping move by the Debtor. This Court's review of the state court litigation file and the Lucre chapter 11 case shows the history of these parties. When Lucre was first pressed by Mr. Schempp in state court, and the Fraudulent Transaction case was ready to be tried, Lucre filed chapter 11. That case was eventually dismissed by agreement of these parties. When Lucre brought the current litigation based on the Debtor's alleged improper actions in foreclosing on the Real Estate, and the Debtor lost its motion for summary judgment in state court, it was Mr. Schempp's LLC's turn to seek a new, possibly more advantageous, forum by filing it own chapter 11.

## 11. Existence of a Right to a Jury Trial

This Removed Action is docketed as a jury case in state court as a result of the Debtor's request.

## 12. Presence in the Proceeding of Non-debtor Parties

This factor is not that significant. There is one non-debtor party involved who is the sole member of the Plaintiff LLC. However, as to the Defendant, there is a significant non-debtor, non-party involved, Mr. Schempp.

## 13. Comity

Taking jurisdiction would have this Court taking over a case that has experienced a number of evidentiary hearings in the state court. The state court has a strong interest in deciding state law issues concerning the real estate located within its district, and has a particularly strong interest in addressing the "reverse piercing" issue in this case. Consequently, for this Court to take jurisdiction of this case away from the state court at this stage of the proceedings and with an important state law issue ready to be decided in that court would be contrary to the interest of comity between the federal courts and the state courts.

## 14. Possibility of Prejudice to Other Parties

The Court believes that moving the controversy to federal court would cause substantial duplication of the effort that has already taken place in the state court. In

addition, because of lack of consent for this Court to enter orders in the non-core matters, it will entail additional duplication between this Court and the U.S. District Court. All of this adds up to added expense for the litigants and all involved parties.

In summary, the following factors, among others, point toward a discretionary abstention in this matter: 1) it will not benefit the administration of this estate for this Court to retain jurisdiction of this case; 2) state law questions predominate in this litigation; 3) the unsettled issue of reverse piercing of the corporate veil is set to be considered by the state court; 4) there are other related state court proceedings; 5) there is no jurisdictional basis for a federal court to hear this case outside of bankruptcy; 6) the substance of the asserted core matters is truly that of non-core state law issues; 7) Debtor is seeking to burden this Court's docket as a tool to gain advantage in long-standing litigation between these or related parties; 8) the Court believes that the filing of this bankruptcy case was, at least in part, motivated by Debtor's desire to find a friendly forum for this controversy; 9) the interest of comity with the state courts; and 10) the expense and prejudice that will accrue to all parties through the duplication of efforts involved in starting this litigation over from scratch in a new forum.

## C. Other Arguments

Finally, the Court will address in more detail the primary arguments made by the Debtor in opposing remand.

### 1. *Judicial Estoppel*

"Judicial estoppel bars a party from adopting inconsistent positions in the same or related litigation. [The Tenth] [C]ircuit has expressly rejected the principle of judicial estoppel." *U.S. v. 162 Me-*

*gaMania Gambling Devices,* 231 F.3d 713, 726 (10th Cir.2000) (citations omitted). However, in light of the Supreme Court's recognition of the doctrine in *New Hampshire v. Maine,* 532 U.S. 742, 749, 121 S.Ct. 1808, 1814–15, 149 L.Ed.2d 968 (2001), this Court believes that whenever the Tenth Circuit has a reason to revisit the issue, it is likely to embrace the Supreme Court's view. Nonetheless, this case does not present this Court with an occasion to take a position on the issue of judicial estoppel.

The Debtor argues that the doctrine of judicial estoppel should operate to prevent Lucre from pursuing its state court action. Maybe so, but this Court need not reach the merits of the Debtor's judicial estoppel argument. It is a side issue with respect to Lucre's motion for remand or abstention. The Colorado state courts recognize the doctrine of judicial estoppel, *see Lyons Sav. And Loan Ass'n v. Dire's Lock and Key Co.,* 885 P.2d 345, 348–49 (Colo.Ct. App.1994), and it may possibly be applicable to the validity of Lucre's position in the underlying state court case. But the doctrine simply has no direct applicability to this Court's analysis of the remand and abstention issues.

Even if this Court were to consider the application of judicial estoppel to the remand motion, the Court notes that when Lucre filed its chapter 11 petition on December 4, 2001, this Debtor LLC was not yet in existence. It was not formed until some two or three weeks later. Lucre's schedules did list pending litigation against Hans Schempp and provide adequate notice of its disputes with him. Thereafter, Schempp formed the LLC and that entity took on the task of purchasing the Compass note, completing the foreclosure on the Real Estate, and continuing the suit on the note. It is also noted that when the Court granted relief from stay in the Lucre chapter 11 case, that relief was entered

in favor of the LLC. It is apparent from the Court's review of the Lucre chapter 11 case and the state court litigation that, in addition to Lucre's allegations that the Debtor LLC is the alter ego of Mr. Schempp and, therefore, an instrument whose alleged improprieties also implicate him, the Plaintiffs also allege that they suffered damages from improper conduct by the LLC after it foreclosed on the Real Estate. That claim is independent of Lucre's claims against Mr. Schempp. These alleged actions occurred either well after Lucre filed chapter 11 or even after its case was dismissed. Thus, the Debtor's argument that Lucre should be estopped from pursuing its claims because it failed to list them in its bankruptcy petition would appear to be flawed. In any event, the Debtor will be able to make the argument to the state court on remand.

## 2. Constructive Trust

■ Debtor argues that, due to the fact that the existing state court litigation involves a claim of constructive trust against the Real Estate, it is a core proceeding and that, consequently, the matter is not amenable to mandatory abstention. But, in the context of this case, where the claim of constructive trust was asserted prior to the filing of the bankruptcy petition and the claim stands completely on its own outside of bankruptcy, that claim is not a core matter.

■ Property that is held by a debtor subject to a constructive trust does not become part of the bankruptcy estate, *Hill v. Kinzler (In re Foster)*, 275 F.3d 924, 926 (10th Cir.2001); *In re Flight Transp. Corp. Securities Litigation*, 730 F.2d 1128, 1136 (8th Cir.1984). "The party seeking imposition of a constructive trust bears the burden of establishing the trust requirements. [The court] look[s] to state law to determine whether a party has met

this." *In re Foster*, 275 F.3d at 926. Thus, the law of the state of Colorado controls the validity of the constructive trust claim asserted in this case.

■ In the Tenth Circuit, a bankruptcy court may act post-petition to impose a constructive trust on property which was in possession of a debtor on the petition date. *See, e.g., U.S. Dept. of Energy v. Seneca Oil Co. (In re Seneca Oil Co.)*, 906 F.2d 1445, 1453 (10th Cir.1990). The effective date of a constructive trust is the date of the wrongdoing. *In re Seneca Oil Co.*, 906 F.2d at 1453. Consequently, a post-petition imposition of a constructive trust has the effect of excluding property from the estate which did not appear to have been encumbered at the petition date. *See Id; contra XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1448–53 (6th Cir.1994).

■ In the case of *Canal Corporation v. Finnman*, 960 F.2d 396 (4th Cir.1992), cited by the Debtor, the court said that "Clearly, the only proper forum for determining whether assets held by a debtor are held in constructive trust is the bankruptcy court, and such proceedings must be considered core proceedings." *Id.* at 402. But that pronouncement was made in the context of a constructive trust claim asserted for the first time after the bankruptcy was filed. In that case, an involuntary petition was filed against the debtor in 1974. Thirteen years later, in 1987, the bankruptcy court determined that funds being held by the estate were held in constructive trust for investors defrauded by the debtor's ponzi scheme. *Id.* at 398. The issues brought before the Fourth Circuit were

[1] whether the bankruptcy court had jurisdiction to determine how to distribute the constructive trust held by the estate, [2] whether it was error to dis-

tribute the constructive trust directly to individuals instead of through the general partners and the limited partnerships which were the investment vehicles in the scheme, and [3] whether the bankruptcy court erred in considering an objection to the proposed distribution which was filed after the time period set by the bankruptcy court for such objections.

*Id.* at 398. That case involved no challenge to the court's jurisdiction to determine the constructive trust, only its jurisdiction to distribute those funds. The unequivocal and often quoted language of the Fourth Circuit in that case appears to this Court to be a bit broad with respect to the issue that was actually before it. More importantly, it is in conflict with the Tenth Circuit's view that matters, such as the case at hand, that stand on their own outside of bankruptcy are, in fact, non-core proceedings. *Gardner v. U.S. (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir.1990). Indeed, "claims (or counterclaims) asserted against the debtor pre-petition are not transformed into core proceedings simply because the debtor files for bankruptcy and removes them." *Asousa Partnership v. Pinnacle Foods, Inc. (In re Asousa Partnership)*, 264 B.R. 376, 387 (Bankr.E.D.Pa.2001).

Nor does Debtor's reference to *Hauytin v. Grynberg*, 52 B.R. 657 (Bankr.D.Colo. 1985), persuade the Court otherwise. There, the constructive trust claim was asserted against the debtor prior to the bankruptcy filing. However, in that case, the constructive trust claimant voluntarily removed the case to bankruptcy court. *Id.* at 658. No motion to remand was ever filed. *Id.* at 659. Moreover, the constructive trust claimant filed a proof of claim in the bankruptcy case. *Id.* at 658. The issue before that bankruptcy court involved whether or not the pending adversary matter and claims objections could be tried to a jury following the passage of the Bankruptcy Amendments and Federal Judgeship Act of 1984. *Id.* at 659. The court found that the actions constituted core proceedings, because they directly involved the allowance of claims under § 502. *Id.* at 661. But the Plaintiff/Movants in this case have taken no action to invoke this Court's core jurisdiction as did the claimants in *Hauytin.*

■ The constructive trust litigation is most certainly "related to" this bankruptcy case. Its resolution determines whether or not this estate has any assets in it or not. Nonetheless, the fact that a constructive trust has been alleged in a "related to" case does not dictate the result that this motion to remand must be denied. There is no requirement that a bankruptcy court must hear any matter grounded in constructive trust. Under the mandatory abstention statute, § 1334(c)(2), a "related to" case must be remanded back to state court if the elements of the statute are satisfied. The Court finds nothing in the statutory language providing an exception where the "related to" matter is based upon constructive trust. 28 U.S.C. § 1334(c)(2). Under the discretionary abstention statute, § 1334(c)(1), the effect of the cause of action on the bankruptcy estate is one of several factors that this Court has considered. As discussed in detail above, the Court finds that several factors outweigh the fact that the litigation concerns disposition of the Debtor's primary asset.

### Conclusion

As noted above, this case represents nothing more than a two-party dispute where one of the litigants seeks to use the bankruptcy court as a litigation tactic, much the same as its opponent previously attempted to do in its own chapter 11 case.

These parties (or their related entities) have been engaged in litigation in various forums for at least the last 7 years. The Debtor's creditors are predominantly insiders and the professionals who have represented Mr. Schempp and/or the Debtor LLC during the litigation. The initiation of this bankruptcy case and the removal of this action have all the earmarks of an attempt to find a more friendly place to litigate when things are not going well in state court. The Debtor is not an operating company with employees who would be hurt if the Debtor is unable to reorganize. In fact, the Debtor was formed solely for the purpose of purchasing the mortgage which encumbered the Real Estate and foreclosing that mortgage. In this case, a reorganization of the Debtor would involve liquidating the Debtor's Real Estate, primarily for the benefit of insiders of the Debtor and the professionals who have assisted in the propagation of the surrounding litigation.

The Court's analysis of 28 U.S.C. § 1334(c)(2) mandatory abstention persuades this Court that it is required, under the facts of this case, to abstain from exercising its jurisdiction over this dispute. Even if that were not the case, given the circumstances surrounding this matter, the Court is satisfied that it is a sound exercise of its discretion to abstain under 28 U.S.C. § 1334(c)(1).

Based on all of the foregoing, the Court

ORDERS that this Court abstains from hearing this Removed Action, and state court Case No. 02 CV 2076 is remanded to the Adams County, Colorado District Court for trial.

FURTHER ORDERS that Debtor's Motion to Amend Answer and Counterclaims was not argued by the parties at hearing, but is moot for purposes of this Adversary Proceeding, and is, therefore, DENIED.