**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 4, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

In re: PRECEDENT HEALTH CENTER
OPERATIONS, LLC,

　　　　Debtor.

_____

JEANNE Y. JAGOW, Trustee of
Precedent Health Center Operations, LLC,

　　　　Plaintiff-Appellant,

　　　v.

MUTUAL OF OMAHA INSURANCE
COMPANY,

　　　　Defendant-Appellee,

　　and

UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

　　　　Intervenor-Defendant
　　　　- Appellee.

No. 09-1206
(D. Colorado)
(D.C. No. 1:09-CV-00191-RPM)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **McKAY**, and **TYMKOVICH**, Circuit Judges.

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

## I. INTRODUCTION

Jeanne Jagow filed this action on behalf of Precedent Health Center Operations LLC ("Precedent").[1] In its capacity as a fiscal intermediary for the Department of Health and Human Services ("HHS"), Mutual of Omaha Insurance Company ("Mutual") processed Medicare payments on HHS's behalf for various health care providers. Alleging Mutual failed to timely process Precedent's Medicare cost reports, thereby depriving Precedent of Medicare reimbursements, Jagow filed this action seeking "all sums due from Medicare for reimbursement," as well as "statutory penalties" and "exemplary damages" for Mutual's "failure to comply with the applicable regulations and procedures of HHS." HHS moved for its substitution as the defendant or, in the alternative, to intervene, and argued it is the only proper defendant in a suit to recover Medicare reimbursements. The district court granted HHS's motion and dismissed Jagow's suit, concluding it lacked subject matter jurisdiction because Precedent had not properly exhausted its administrative remedies. Jagow appeals.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **AFFIRMS** the district court's decision.

---

[1] Jagow is Precedent's Trustee with respect to its Chapter 7 bankruptcy proceedings.

## II.    BACKGROUND

*A.  The Medicare Reimbursement Process*

A brief overview of the Medicare reimbursement process as it generally operated at the time Jagow filed this action is helpful.  Congress established the Medicare program to assist elderly and disabled persons to purchase necessary health care.  42 U.S.C. §§ 1395 et seq. ("Medicare Act").  Under the Medicare Act, the Secretary of HHS reimburses hospitals for covered inpatient services provided to Medicare beneficiaries.  42 U.S.C. § 1395ww.  A provider wishing to be reimbursed for Medicare-covered services was required to enter into an agreement with HHS, which incorporated various provisions of the Medicare Act and its implementing regulations.  42 U.S.C. § 1395cc; 42 C.F.R. Part 481.  The Medicare Act authorized a fiscal intermediary to process, on HHS's behalf, payments made to providers.[2]  42 U.S.C. § 1395h (2003); 42 C.F.R. Part 421, Subpart B; 42 C.F.R. § 421.3.  Intermediaries implemented the payment schemes mandated by the Medicare Act and regulations. 42 U.S.C. § 1395h (1997); 42 C.F.R. Part 421, Subpart B (2005).  Intermediaries were required to have an agreement with the Health Care Financing Administration ("HCFA") and had to process claims in accordance with published HCFA guidelines.  42 C.F.R. Part 421 (2005).

---

[2]The functions previously undertaken by fiscal intermediaries are now performed by "Medicare administrative contractors."  42 U.S.C. §§ 1395h, 1395kk-1.

To ensure providers were paid promptly, intermediaries were required to make payments on an interim basis and subsequently conduct audits to determine the precise amount of reimbursement due. 42 C.F.R. § 413.60(a). These interim payments were made during a provider's fiscal cost report year, on the basis of an estimate of what the provider's reasonable costs would be for a given period. *Id.* After the cost report year was over, the provider submitted its year-end cost report, and a reasonable cost determination was made by the intermediary. 42 U.S.C. § 1395g; 42 C.F.R. § 413.60(b). Through the cost report process, interim payments were reconciled with Medicare reimbursement amounts the provider was actually entitled to for the cost report year. 42 C.F.R. Part 413, Subpart E. After this reconciliation, the fiscal intermediary would issue to the provider a notice of program reimbursement ("NPR"), which identified any adjustments that were made, and calculated the amount of any Medicare underpayment or overpayment. 42 C.F.R. § 405.1803. In making any further interim payments, adjustments were made to take into account prior underpayment or overpayment. 42 U.S.C. § 1395g(a). A provider could challenge an adverse determination and, if the amount in controversy on a year-end cost report was $10,000 or more, the provider could request a hearing before the Provider Reimbursement Review Board (the "Review Board"). 42 U.S.C. § 1395oo. The HHS Secretary was required to reverse, affirm, or modify the Review Board's decision within 60 days after it was issued. *See* 42 U.S.C. § 1395oo(f)(1). The Review Board's decision

-4-

was subject to judicial review by filing a civil action in the appropriate federal district court. *See* 42 U.S.C. § 1395oo(f)(1).

## B. *Jagow's Factual Allegations*

The facts, as alleged in Jagow's complaint, are as follows. Precedent operated an HHS-certified health care facility that provided Medicare and Medicaid services to patients. Pursuant to its contract with HHS, Mutual functioned as a fiscal intermediary under the regulations contained in the Medicare Financial Management Manual. To obtain reimbursement for providing Medicare services, Precedent was required to submit cost reports to Mutual. In turn, Mutual was required to process the cost reports in accordance with HHS regulations. Precedent timely prepared and submitted cost reports for the 1998 and 1999 fiscal years. In January 2001, Mutual issued a timely NPR for the 1999 fiscal year. According to Jagow, Mutual's 1999 NPR failed to include adjustments for "net depreciation" and "related party" transactions. Consequently, Precedent disagreed with the NPR and appealed to the Review Board. Before the Review Board could issue its decision, the parties settled their dispute, and Mutual issued a Notice of Corrected Program Reimbursement on October 17, 2002. Precedent issued a final cost report on July 2, 2005, containing adjustments consistent with the settlement.[3] Although Mutual received that final

_____

[3]Unfortunately, it is difficult to decipher Jagow's complaint, and Jagow's brief provides no clarification. Consequently, it is not clear why a new final cost
(continued...)

cost report on July 5, 2005, it did not accept or reject it by July 6, 2006, as required by law. *See* 42 C.F.R. §§ 405.1803(a) & 405.1835(c) (2005).

Although not reflected in Jagow's complaint, it is uncontested Precedent did not avail itself of available administrative remedies for Mutual's failure to timely act on Precedent's 2005 final cost report. Under 42 C.F.R. § 405.1835(c) (2005),[4] a provider

> has a right to a hearing before the Board if an intermediary's determination concerning the amount of reasonable cost reimbursement due a provider is not rendered within 12 months after receipt by the intermediary of a provider's perfected cost report or amended cost report . . . provided such delay was not occasioned by the fault of the provider.

Instead, eighteen months after its administrative appeal rights accrued, Jagow filed the instant action against Mutual in the United States Bankruptcy Court for the District of Colorado.[5] Jagow's complaint sought "all sums due from Medicare for reimbursement," as well as "statutory penalties" and "exemplary damages" for

_____

[3](...continued)
report was necessary in light of the parties' settlement and the issuance of the Notice of Corrected Program Reimbursement. Jagow's reply brief further confuses the matter by referring to an unidentified decision from the Review Board's Hearing Officer, an event which was not mentioned in either the complaint or Jagow's opening appellate brief. Additionally, Jagow's complaint never indicates which years are covered by the July 2005 final cost report or which years the reimbursement she seeks covers.

[4]The current version of this provision is located at 42 C.F.R. § 405.1835(a)(3)(ii).

[5]According to Jagow's complaint, Precedent filed a Chapter 7 bankruptcy petition on July 1, 1999.

Mutual's "failure to comply with the applicable regulations and procedures of HHS."

Shortly after Jagow filed the complaint, HHS sought to be substituted as the defendant or, in the alternative, to intervene. The bankruptcy court denied the motion, noting that while the allegations of the complaint were, "arguably, ambiguous, or unclear, as to whether HHS is responsible, culpable or liable, directly or indirectly, for the damages claimed by" Precedent, it was "unequivocal and unqualified" from the responses filed to the motion that damages were sought "solely and exclusively" from Mutual. Mutual then filed a motion for withdrawal of reference with the district court, arguing "resolution of the Complaint will require substantial application and interpretation of Medicare statutes and regulations, which consideration will predominate over the consideration of any bankruptcy laws." The district court granted the motion, concluding the proceeding was not a core proceeding within the definition of 28 U.S.C. § 157(a)(2) because it involved questions arising under the Medicare Act and its implementing regulations. At the same time, the district court reversed the bankruptcy court's denial of HHS's motion to intervene because "[u]ltimate liability for payment of reimbursement for services which are the subject of the complaint for declaratory relief is with [HHS]."

Proceeding before the district court, Mutual and HHS filed motions to dismiss pursuant to 12(b)(1). They argued HHS was the real party in interest and

Jagow's failure to exhaust mandatory administrative remedies deprived the district court of jurisdiction. The district court granted the motions to dismiss, ruling that Mutual had no liability, HHS was the only proper source of the claim for reimbursement under Medicare, and Jagow failed to exhaust her administrative remedies. Accordingly, the action was dismissed for lack of subject matter jurisdiction. Jagow timely appealed.

## III. DISCUSSION

We review a district court's dismissal for lack of subject matter jurisdiction de novo. *Butler v. Kempthorne*, 532 F.3d 1108, 1109 (10th Cir. 2008). Jagow argues the district court erred in concluding an action for reimbursement cannot proceed against an intermediary. We agree with the district court, however, that a provider seeking to recover Medicare reimbursements must proceed against HHS.

The relevant federal regulation provides:

> Intermediaries and carriers act on behalf of [HHS] in carrying out certain administrative responsibilities that the law imposes. Accordingly, their agreements and contracts contain clauses providing for indemnification with respect to actions taken on behalf of [HHS] and [HHS] is the real party of interest in any litigation involving the administration of the program.

42 C.F.R. § 421.5(b). As defendants point out, the legislative history of the Medicare Act also makes clear Congress's intention that the government, not the intermediary, is the real party in interest in suits involving the administration of the program:

> In the performance of their contractual undertakings, the carriers and fiscal intermediaries would act on behalf of the Secretary, carrying on for him the governmental administrative responsibilities imposed by the bill. The Secretary, however, would be the real party in interest in the administration of the program and the Government would be expected to safeguard the interests of his contractual representatives with respect to their actions in the fulfillment of commitments under the contracts and agreements entered into by them with the Secretary.

S. Rep. No. 89-404, at 50 (1965).

This approach is logical in light of the complex system of statutes and regulations governing which services are compensable under the Medicare program. Due to this complexity, reimbursement errors are bound to occur. The Medicare Act accounts for such a possibility by setting out an administrative appeal process. Indeed, with respect to the particular error alleged here, an intermediary's failure to make a timely determination regarding a provider's claimed reimbursement, the applicable regulations provide as follows:

> [T]he provider also has a right to a hearing before the Board if an intermediary's determination concerning the amount of reasonable cost reimbursement due a provider is not rendered within 12 months after receipt by the intermediary of a provider's perfected cost report or amended cost report.

42 C.F.R. § 405.1836(c) (2005). 42 U.S.C. § 405(h) makes it clear that this review process, as set out by statute and regulation, must be followed in order to recover a claimed reimbursement.

Jagow acknowledges this administrative process, but argues a provider is entitled to raise a cause of action directly against an intermediary where the

complaint alleges intentional conduct or gross negligence. *See Rochester Methodist Hosp. v. Travelers Ins. Co.*, 728 F.2d 1006, 1015-16 (8th Cir. 1984). We need not determine whether such a cause of action exists, however, as Jagow's complaint does not allege an intentional tort or gross negligence. The only intentional conduct mentioned in the complaint is an allegation that Mutual "[i]ntentionally avoid[ed] and improperly appl[ied] Medicare Regulations to the Cost Reports." Reading the complaint as a whole, this allegation does not suggest Jagow intended to plead a tort claim; the complaint never so much as alludes to the elements of a tort claim. Furthermore, while Jagow's complaint does allege that Mutual's alleged violations "constitute fraudulent conduct on the part of the Defendant that resulted in damages to Plaintiff," Federal Rule of Civil Procedure 9(b) requires that a fraud claim be pled with particularity. Jagow's complaint falls well short of this standard.

Additionally, Jagow's complaint seeks "a declaratory judgment determining the sums due plaintiff from defendant in accordance with the Final Cost Report," and requests monetary recovery for "all sums due from Medicare for reimbursement" and "statutory penalties and exemplary damages" under the Medicare Act. Jagow's claim, therefore, bears the hallmarks of a claim for Medicare reimbursement rather than a tort claim. Thus, even if we were to recognize a cause of action against an intermediary where an intentional tort or gross negligence is alleged, Jagow has not presented such a claim.

-10-

Finally, irrespective of any wrongful conduct on the part of an intermediary in calculating reimbursements, a provider still has access to the administrative review process. Jagow provides no reason as to why Precedent's reimbursable costs could not be recovered through those channels despite Mutual's alleged intentional and improper application of the Medicare regulations. Permitting a provider to ignore the exhaustion requirement and instead proceed against the intermediary directly would have the practical effect of rendering the administrative process wholly ineffective, as a mere allegation that an intermediary's failure to pay amounted to gross negligence would allow a provider to circumvent HHS's review. Consequently, even under the hypothetical tort claim to which Jagow alludes, a provider would have to establish that the defendant's conduct actually deprived the provider of utilizing the administrative review process. Jagow, however, makes no such allegation.

As Jagow's only avenue for relief was through the administrative review process and there is no dispute that Jagow failed to exhaust administrative remedies, the district court correctly concluded it lacked subject matter jurisdiction. *See* 42 U.S.C. § 405(g), (h); *Shalala v. Ill. Council on Long Term Care, Inc.*, 529 U.S. 1, 7-10 (2000).

## IV. CONCLUSION

For the foregoing reasons, this court **AFFIRMS** the district court's dismissal of Jagow's complaint for lack of subject matter jurisdiction.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge