NOT FOR PUBLICATION[1]

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE TENTH CIRCUIT

FILED
U.S. Bankruptcy Appellate Panel
of the Tenth Circuit

**December 30, 2022**

**Blaine F. Bates**
**Clerk**

_____

IN RE FRANK MCINTYRE,

Debtor.

_____

FRANK MCINTYRE,

      Plaintiff - Appellant,

v.

ACTIVE ENERGIES SOLAR, LLC,
JASON WEINGAST, and RICHARD
CLUBINE,

      Defendants - Appellees.

BAP No. CO-22-004

Bankr. No. 19-15069
Adv. No. 19-01268
Chapter 13

OPINION

_____

Appeal from the United States Bankruptcy Court
for the District of Colorado

_____

Before **HALL**, **LOYD**, and **THURMAN**, Bankruptcy Judges.

_____

**HALL**, Bankruptcy Judge.

_____

Unsuccessful litigants in state court often turn to the bankruptcy court to attempt a second bite of the apple. Although bankruptcy courts have broad jurisdiction over matters

---

[1] This unpublished opinion may be cited for its persuasive value, but is not precedential, except under the doctrines of law of the case, claim preclusion, and issue preclusion. 10th Cir. BAP L.R. 8026-6.

concerning the debtor's estate, bankruptcy courts may, and in some cases must, abstain from hearing certain state law claims. Appellant Frank William McIntyre ("McIntyre") filed a state court action against Appellees. After the state court found in Appellees' favor on some of his claims, McIntyre filed a chapter 13 petition and subsequently filed an adversary proceeding based on the same causes of action pending in the state court. Ultimately, the Bankruptcy Court abstained from hearing the adversary proceeding. McIntyre appealed, and we affirm.

## I.　　Background

In 2016, Glenwood Clean Energy, LTD ("GCE")[2] established a business relationship with Active Energies Solar, LLC ("AES") and Jason Weingast, then-vice president of AES, whereby GCE would sell, and AES would install solar energy systems.[3] The parties did not sign a written agreement, but the understanding between the parties was GCE would earn a commission based on a percentage of the gross sales.[4]

The next year, Richard Clubine bought AES.[5] Shortly after, the relationship between GCE and AES soured when McIntyre learned Clubine and AES installed a

---

[2] McIntyre is the former sole owner and member of Glenwood. *See Corporate Resolution*, *in* Appellant's App. at 62.

[3] *See Adversary Complaint and Objection to Claims of Active Energies Solar, LLC at ¶¶ 11–35*, *in* Appellant's App. at 12–15; Invoices, *in* Appellant's App. at 37–47; *General Affidavit of Jason Weingast*, *in* Appellant's App. at 60.

[4] *See Adversary Complaint and Objection to Claims of Active Energies Solar, LLC at ¶¶ 11–35*, *in* Appellant's App. at 12–15; *see also* Invoices, *in* Appellant's App. at 37–47.

[5] General Affidavit of Jason Weingast, in Appellant's App. at 60.

2

project without McIntyre and GCE and subsequently refused to pay GCE a commission thereon.[6] In response, GCE filed a state court lawsuit (the "State Court Action") against AES and Clubine—later joining Weingast—asserting numerous tort and contract claims.[7] The state court dismissed the tort claims,[8] but the breach of contract, breach of settlement agreement, and unjust enrichment claims (the "Contract Claims") survived.[9] Subsequently, McIntyre requested reconsideration of the orders dismissing the tort claims (the "State Court Motions for Reconsideration"),[10] and AES filed a request for attorney's

---

[6] *See Adversary Complaint and Objection to Claims of Active Energies Solar LLC* at ¶¶ 41–76, *in* Appellant's App. at 16–19; *Plaintiff's Second Amended Complaint* at ¶¶ 11–22, *in* Appellant's App. at 99–100.

[7] McIntyre asserted the following as his causes of action in state court: (1) Breach of Contract on the Richards/Ripple Project; (2) Breach of Settlement Agreement; (3) Unjust Enrichment – Quantum Meruit on the Ripple Deal; (4) Unjust Enrichment – Quantum Meruit Other Business; (5) Breach of Fiduciary Duty; (6) Interference with a Business Opportunity; (7) Conversion; (8) Fraud; (9) Intentional Misrepresentation; and (10) Respondeate [sic] Superior. *Plaintiff's Second Amended Complaint* at ¶¶ 31–40, *in* Appellant's App at 102–06.

[8] *See Order Granting in Part AES Defendants' Partial Motion to Dismiss Pursuant to C.R.C.P. 12(b)(5)*, *in* Appellant's App. at 84–96; *Order Granting Defendant Weingast's Motion to Dismiss Pursuant to C.R.C.P. 12(b)(5)*, *in* Appellant's App. at 141–45.

[9] *See Order Granting in Part AES Defendant's Partial Motion to Dismiss Pursuant to C.R.C.P. 12(b)(5)* at 13, *in* Appellant's App. at 96.

[10] *See Plaintiff's Motion for Reconsideration of Order Dismissing Claims Against Defendant Weingast*, *in* Appellant's App. at 159–74; *Plaintiff's Motion for Reconsideration of Order Dismissing Claims Against Defendants Clubine and AES*, *in* Appellant's App. at 175–87.

fees and costs.[11] The state court awarded fees and costs to AES, but the State Court

Motions for Reconsideration remain pending.[12]

On June 12, 2019, the same day the state court awarded AES fees and costs,

McIntyre filed his chapter 13 petition for relief (the "Bankruptcy Case").[13] In turn, AES

filed a proof of claim in the chapter 13 case related to the state court fees and costs

award. McIntyre then filed an adversary proceeding (the "Adversary Proceeding")

against, among others, AES, asserting (i) essentially the same claims he brought in the

State Court Action[14] (the "State Law Claims") and (ii) an objection to AES's proof of

claim (the "Claim Objection").[15] In response, AES filed a motion requesting the

Bankruptcy Court abstain from hearing the Adversary Proceeding.[16] On January 14,

---

[11] *See AES Defendants' Motion for Attorneys Fees and Bill of Costs Against Frank McIntyre*, *in* Appellant's App. at 188–98.

[12] *See Order: AES Defendants' Motion for Attorneys Fees and Bill of Costs Against Frank McIntyre*, *in* Appellant's App. at 200.

[13] *See id.*, *in* Appellant's App. at 200. *See also Notice of Bankruptcy Case Filing*, *in* Appellant's App at 322.

[14] McIntyre asserted the following as his causes of action in the Adversary Proceeding: (1) Breach of Contract on the Richards/Ripple Project; (2) Breach of Settlement Agreement; (3) Unjust Enrichment – Quantum Meruit on the Ripple Deal; (4) Unjust Enrichment – Quantum Meruit Other Business; (5) Breach of Fiduciary Duty; (6) Interference with a Business Opportunity; (7) Fraud; (8) Interference with a Contract; and (9) Respondeate [sic] Superior; and Objection to Claims of Active Energies Solar. *See Adversary Complaint and Objection to Claims of Active Energies Solar, LLC* at ¶¶ 77–88, *in* Appellant's App. at 20–23.

[15] Prior to the Bankruptcy Case, McIntyre as sole member dissolved GCE and assigned its rights, liabilities, and obligations to himself. *See Corporate Resolution*, *in* Appellant's App. at 62.

[16] *AES Defendants' Motion to Abstain*, *in* Appellant's App. at 68–82.

2020, the Bankruptcy Court entered an order (the "January 14, 2020 Order") granting the motion to abstain, in part, by dismissing the State Law Claims without prejudice and holding the Claim Objection in abeyance pending resolution of the State Court Action.[17]

McIntyre filed a motion for reconsideration of the January 14, 2020 Order,[18] which the Bankruptcy Court denied (the "April 16, 2020 Order").[19] Finally, on January 31, 2022, the Bankruptcy Court entered a final order dismissing the Claim Objection without prejudice to refiling and dismissed the Adversary Proceeding (the "Final Order").[20] McIntyre appeals all three orders.[21]

## II.    Jurisdiction

This Court has jurisdiction to hear timely filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless a party elects to have the district court hear the appeal.[22] McIntyre filed a timely notice of appeal after

---

[17] January 14, 2020 Order at 7, *in* Appellant's App. at 218.

[18] *Plaintiff's Motion for Reconsideration of Order Granting Defendants' Motion to Abstain*, *in* Appellant's App. at 219–23.

[19] April 16, 2020 Order at 4, *in* Appellant's App. at 230.

[20] Final Order at 2, *in* Appellant's App. at 255.

[21] McIntyre previously appealed the January 14, 2020 Order dismissing the State Law Claims in the adversary complaint. A previous BAP panel dismissed that appeal as interlocutory in BAP Case No. CO-20-21. *See Order Denying Motion for Leave and Dismissing Appeal*, *in* Appellant's App. at 239–41.

[22] 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8003, 8005.

entry of the Final Order.[23] No party elected to have the district court hear the appeal.

Accordingly, this Court has jurisdiction over this appeal.

### III.     Issues on Appeal and Standard of Review

There are two issues on appeal.[24] First, whether the Bankruptcy Court erred in

concluding it lacked subject matter jurisdiction over the State Law Claims, which we

review de novo.[25] And second, whether the Bankruptcy Court erred by abstaining from

hearing the State Law Claims and the Claim Objection, which we review for abuse of

discretion.[26] An abuse of discretion occurs if "the lower court made a clear error of

judgment or exceeded the bounds of permissible choice in the circumstances."[27]

---

[23] *See In re Durability, Inc.*, 893 F.2d 264, 266 (10th Cir. 1990) (noting that "the appropriate 'judicial unit' for application of these finality requirements in bankruptcy is not the overall case, but rather the particular adversary proceeding, or discrete controversy pursued within the broader framework cast by the petition").

[24] In McIntyre's statement of issues, he also contends the Bankruptcy Court erred in lifting the automatic stay. *See* Appellant Opening Br. 2. However, in briefing, McIntyre does not directly argue how lifting the stay was an error. *See id.* 23–27. McIntyre's failure to adequately raise this argument constitutes waiver of the issue so we will not address that argument here. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (finding waiver when appellant failed to raise an issue in the opening brief).

[25] Dismissal for lack of subject matter jurisdiction is reviewed de novo. *Mut. of Omaha Ins. Co. v. U.S. Dep't of Health & Human Servs. (In re Precedent Health Ctr. Operations, LLC)*, 392 F. App'x 618, 621 (10th Cir. 2010) (citing *Butler v. Kempthorne*, 532 F.3d 1108, 1109 (10th Cir. 2008)).

[26] *Hall v. N. Am. Mortg. Co. (In re Hall)*, 497 B.R. 167, 2013 WL 3786783 at *2 (10th Cir. BAP July 22, 2013) (unpublished) (reviewing permissive abstention for abuse of discretion). "Under the abuse of discretion standard, a trial court's decision will not be disturbed unless the appellate court has a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *In re Westby*, 486 B.R. 509, 515 (10th Cir. BAP 2013).

[27] *In re Westby*, 486 B.R. at 515.

6

## IV.    Discussion

Understanding the jurisdiction of the bankruptcy courts can be an elusive study but is not insurmountable if taken step by step. First, pursuant to 28 U.S.C. § 1334, the federal district courts have original and exclusive jurisdiction over cases under Title 11 of the United States Code (*i.e.* bankruptcy cases) and over all property of a bankruptcy estate.[28] Such courts also have original but not exclusive jurisdiction over "civil proceedings arising under [T]itle 11, or arising in or related to cases under [T]itle 11."[29] By virtue of 28 U.S.C. § 157(a), the federal district courts are authorized, but not required, to refer to the bankruptcy courts cases under Title 11, and proceedings arising under Title 11, or arising in or related to cases under Title 11.[30] The United States District Court for the District of Colorado has made the reference to the Colorado bankruptcy court pursuant to local rule and General Procedure Order No. 1984–3.[31]

Second, pursuant to 28 U.S.C. § 157(b)(1), bankruptcy courts may hear and determine all cases under the Bankruptcy Code or arising in a case under the Bankruptcy

---

[28] 28 U.S.C. § 1334(a), (e)(1).

[29] *Id.* § 1334(b).

[30] *Id.* § 157(a).

[31] Pursuant to General Procedure Order No. 1984–3, the United States District Court for the District of Colorado has made the reference to the Bankruptcy Court for the District of Colorado of all cases under Title 11 and any and all proceedings arising under Title 11, the Bankruptcy Code. *See also* D.C. Colo. L. Civ. R. 84.1(a) ("Automatic Referral. A case or proceeding brought under or related to Title 11 . . . shall be referred automatically to the bankruptcy judges of this district under 28 U.S.C. § 157.").

Code, otherwise known as "core" proceedings.[32] "Core proceedings are proceedings that involve rights created by bankruptcy law or which only arise in a bankruptcy proceeding."[33] Simply put, core proceedings do not exist outside of bankruptcy, and the bankruptcy court's jurisdiction over them (with limited exceptions)[34] is undebatable.[35] A non-exclusive list of "core proceedings" is set forth in Section 157(b)(2) and includes "matters concerning the administration of the estate," "allowance or disallowance of claims against the estate," and "counterclaims by the estate against persons filing claims against the estate."[36]

Third, non-core matters are "those that are 'not . . . core' but are 'otherwise related to a case under [T]itle 11.'"[37] Non-core matters do not depend on the Bankruptcy Code

---

[32] *In re Houlik*, 481 B.R. 661, 673 (10th Cir. BAP 2012) (citing 28 U.S.C. § 157(b)(1)).

[33] *In re Telluride Income Growth, L.P.*, 364 B.R. 390, 397 (10th Cir. BAP 2007) (citing *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir.1990)).

[34] Bankruptcy courts are constitutionally barred from deciding certain "core" claims without the parties' consent. 28 U.S.C. § 157(b)(2)(I); *Exec. Benefits Ins. Agency v. Arkison*, 573 U.S. 25, 34-35 (2014) (discussing *Stern v. Marshall*, 564 U.S. 462 (2011)). The Supreme Court held in *Stern* "that section 157(b)(2)(C), which authorizes the bankruptcy judges to issue final determinations of counterclaims by the estate against persons filing claims against the estate, has unconstitutionally assigned, for at least some proceedings, the 'judicial Power of the United States' to the non-Article III bankruptcy judges." 1 COLLIER ON BANKRUPTCY ¶ 3.02 (16th ed. 2022) (discussing *Stern* ). The present case involves no such counterclaims, and therefore, *Stern* is inapplicable.

[35] *In re Houlik*, 481 B.R. at 673.

[36] 28 U.S.C. § 157(b)(2). A proceeding "arises under" title 11 "if it asserts a cause of action created by the Code." *In re Midgard Corp.*, 204 B.R. 764, 771 (10th Cir. BAP 1997). A proceeding "arises in" when the matter could not exist outside the bankruptcy case but is not a cause of action under the Code. *Id.*

[37] *Exec. Benefits*, 573 U.S. at 34 (citing 28 U.S.C. § 157(c)(1)).

8

for their existence and can proceed in another court outside of bankruptcy.[38] A bankruptcy court has jurisdiction over non-core proceedings when they are related to the bankruptcy case because they could conceivably have an effect on the bankruptcy estate.[39] There is, however, no statutory definition for determining if a matter falls within a bankruptcy court's "related to" subject matter jurisdiction.[40] Related proceedings "include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate."[41]

The outer limits of a bankruptcy court's subject matter jurisdiction are those non-core matters "related to" a case under Title 11.

> Put simply: If a matter is core, the statute empowers the bankruptcy judge to enter final judgment on the claim, subject to appellate review by the district court. If a matter is non-core, and the parties have not consented to final adjudication by the bankruptcy court, the bankruptcy judge must propose findings of fact and conclusions of

---

[38] *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1517–18 (10th Cir. 1990) (first citing *United States v. Farmers State Bank of Leed (In re Alexander)*, 49 B.R. 733, 736 (Bankr. D. N.D. 1985); and then citing *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987)).

[39] *In re Gardner*, 913 F.2d at 1518; *In re Telluride Income Growth, L.P.*, 364 B.R. 390, 397–98 (10th Cir. BAP 2007) (citing *Gregory Ranch v. Lyman (In re Gregory Rock House Ranch, LLC)*, 339 B.R. 249, 253 (Bankr. D. N.M. 2006)).

[40] *Benedictine Coll., Inc. v. Century Off. Prods., Inc.*, 866 F. Supp. 1323, 1326 (D. Kan. 1994); *Pro. Home Health Care, Inc. v. Complete Home Health Care, Inc. (In re Pro. Home Health Care, Inc.)*, No. 01-1116-ABC, 2002 WL 1465914, at *2 (Bankr. D. Colo. July 2, 2002) (unpublished).

[41] *In re Midgard Corp.*, 204 B.R. at 771 (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.5 (1995)); *In re Eneco, Inc.*, 431 B.R. 308, 2010 WL 744351, at *9 (10th Cir. BAP Mar. 2, 2010) (unpublished).

9

law. Then, the district court must review the proceeding de novo and enter final judgment.[42]

A. *Although the Bankruptcy Court erred in concluding it did not have subject matter jurisdiction over the State Law Claims, such error was harmless.*

   i.     <u>Section 1334(b)</u>

McIntyre argues the Bankruptcy Court erred in concluding it lacked subject matter jurisdiction over the State Law Claims. Specifically, McIntyre claims the State Law Claims either arise under the Bankruptcy Code, or arise in or are related to the Bankruptcy Case under 28 U.S.C. § 1334(b). The Bankruptcy Court concluded the State Law Claims did not arise under the Bankruptcy Code and did not arise in, and are not related to, the Bankruptcy Case. Consequently, the Bankruptcy Court also concluded it did not have subject matter jurisdiction over the State Law Claims. Although we agree with the Bankruptcy Court the State Law Claims neither arise under the Bankruptcy Code nor arise in the Bankruptcy Case, we find the Bankruptcy Court erred in concluding the State Law Claims were not related to the Bankruptcy Case. However, we further conclude the Bankruptcy Court's determination the State Law Claims were not related to the Bankruptcy Case to be harmless error given its discretionary decision to permissively abstain from hearing the State Law Claims.

The State Law Claims, by definition, do not arise under Title 11. A claim arises under the Title 11 if it asserts a cause of action created by the Bankruptcy Code, such as exemption claims under 11 U.S.C. § 522 and avoidance claims under chapter 5 of the

---

[42] *Exec. Benefits*, 573 U.S. at 34. *See also* 28 U.S.C. § 157(c).

10

Bankruptcy Code.[43] Because the State Law Claims were first raised by McIntyre against AES in the State Court Action, which was filed prior to the commencement of the Bankruptcy Case, and are based entirely on Colorado law and not the Bankruptcy Code, the State Law Claims also, by definition, did not arise in the Bankruptcy Case under Title 11.[44]

However, the State Law Claims were related to the Bankruptcy Case within the meaning of § 1334(b). "Related to" proceedings are those that could be commenced independently of a bankruptcy case but the "outcome of that proceeding could conceivably have an effect on the estate being administered in bankruptcy."[45] A proceeding affects a bankruptcy estate "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate."[46]

The State Law Claims were related to the Bankruptcy Case sufficiently to confer jurisdiction under § 1334(b) because the Contract Claims and State Motions for Reconsideration were still pending in state court at the time of the bankruptcy filing. If McIntyre prevails on the State Court Claims on reconsideration or on appeal thereof, his

---

[43] *In re Migard Corp.*, 204 B.R. at 771.

[44] *Id.* at 771 ("Proceedings 'arising in' in a bankruptcy case are those that could not exist outside of a bankruptcy case, but that are not causes of action created by the Bankruptcy Code.") (citing *In re A.H. Robins Co.*, 86 F.3d 364, 371 (4th Cir. 1996)).

[45] *Id.* (quoting *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir. 1990)).

[46] *In re Gardner*, 913 F.2d at 1518.

11

bankruptcy estate could be affected as it "could alter the debtor's rights, liabilities, options, or freedom of action" and give rise to an asset not otherwise available for distribution. On the flip side, any defeat of the State Law Claims could give rise to additional claims by AES against McIntyre thereby impacting the administration of the bankruptcy estate.[47] Thus, the Bankruptcy Court had subject matter jurisdiction over the State Law Claims as they are related to the Bankruptcy Case. Nevertheless, given our conclusion below—that the Bankruptcy Court did not err in exercising permissive abstention—we conclude this error to be harmless.

    ii.    <u>Section 1334(e)(1)</u>

McIntyre also argues the Bankruptcy Court had subject matter jurisdiction over the State Law Claims because they stem from his "claim to collect" the alleged AES receivable (the "Receivable"), which he asserts is a proceeding to determine whether the claim is property of the bankruptcy estate. According to McIntyre, such proceeding invokes exclusive jurisdiction under 28 U.S.C. § 1334(e)(1).

Section 1334(e)(1) provides that bankruptcy courts, by reference, have exclusive jurisdiction "of all the property wherever located, of the debtor" as of the petition date and "of property of the estate."[48] By virtue of § 1334, "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently

---

[47] *Id.*

[48] 28 U.S.C. § 1334(e)(1).

and expeditiously with all matters connected with the bankruptcy estate."[49]

Consequently, bankruptcy courts have exclusive jurisdiction over property of the

bankruptcy estate[50] and the determination of what constitutes property of the bankruptcy

estate.[51]

Although the Bankruptcy Court has exclusive jurisdiction over property of the

estate, wherever located,[52] the Bankruptcy Court, nevertheless, is not required to hear all

proceedings that may affect property of the bankruptcy estate.[53] McIntyre relies on *In re*

*Bucyrus Grain Co.*, *In re Gardner*, and *In re Hafen* to argue the Bankruptcy Court had

---

[49] *In re Hafen*, 616 B.R. 570, 578 (10th Cir. BAP 2020) (citing *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (explaining 28 U.S.C. § 1334(b)'s "related to" jurisdiction is intentionally broad)).

[50] *In re Hafen*, 616 B.R. at 578 (citing *In re Gardner*, 913 F.2d at 1518 ).

[51] *Id.*

[52] 28 U.S.C. § 1334(e)(1).

[53] *See In re Phoenix Env't, LLC*, Adv. Pro. 11-1199, 2012 WL 279446, at *2 (Bankr. D.N.M. Jan. 31, 2012) (unpublished) ("Unquestionably the Court has exclusive jurisdiction over property of the estate, wherever located. § 1334(e)(1). But that fact alone does not mean that the Court must itself conduct all the proceedings that might bear on the disposition of property of the estate.") (citing *Oakwood Acceptance Corp. v. Tsinigini (In re Oakwood Acceptance Corp.)*, 308 B.R. 81, 86–88 (Bankr. D. N.M. 2004) (concluding a bankruptcy court may remand a core proceeding to its original forum when the forum's laws predominate over the bankruptcy law issues); *see also In re Med Gen., Inc.*, 672 F.2d 716, 719 (8th Cir. 1982) (concluding the court's exclusive jurisdiction over property of the estate does not prohibit the court "to remit ancillary matters, like the collection of debts, to other forums").

exclusive jurisdiction over collection of the Receivable.[54] However, his reliance is misplaced.

First, the *Bucyrus* and *Gardner* courts did not analyze the issue of whether a claim to collect an account receivable of the bankruptcy estate constitutes a dispute over whether such claim is property of the estate.[55] Additionally, although *Hafen* concluded the bankruptcy court is the only court with subject matter jurisdiction to determine whether a claim is property of the estate,[56] the adversary proceeding at issue here is not such a proceeding.

In *Hafen*, whether the bankruptcy court was the proper forum to adjudicate the claims was not at issue; rather, the issue was whether claims belonged to the debtor's investors or the bankruptcy estate. In fact, *Hafen* stands for the conclusion that bankruptcy courts are the only courts with subject matter jurisdiction to determine

---

[54] *In re Bucyrus Grain Co.*, 56 B.R. 204 (Bankr. D. Kan. 1986); *In re Gardner*, 913 F.2d 1515 (10th Cir. 1990); *In re Hafen*, 616 B.R. 570 (10th Cir. BAP 2020).

[55] *In re Bucyrus Grain Co.*, 56 B.R. at 206 (holding an action to collect an account receivable is a core proceeding); *In re Gardner*, 913 F.2d at 1518–19 (holding the bankruptcy court's jurisdiction over disputes concerning certain property lapses after determining the debtor has no interest in that property).

[56] *In re Hafen*, 616 B.R. at 579. In *Hafen*, investors of the debtor filed state court fraudulent transfer claims many years after the debtor received his discharge. *Id.* at 573. The debtor moved for discharge violation sanctions alleging the investors lacked standing because the claims were property of the bankruptcy estate and therefore, belonged to the bankruptcy trustee. *Id.* Without considering the standing issue, the bankruptcy court denied the sanctions stating the state court could determine the standing issue. *Id.* On appeal, the appellate court held the bankruptcy court did not have discretion to defer ruling on the standing issue to the state court because the bankruptcy court is the exclusive forum to determine whether the claims were property of the estate. *Id.* at 579.

whether a claim is property of the estate, but not the only courts with subject matter jurisdiction to liquidate a claim owned by a bankruptcy estate.[57]

In this appeal, whether McIntyre is the proper party to pursue the State Law Claims is not at issue. It is clear McIntyre had standing to bring the State Law Claims, which are property of his bankruptcy estate. The issue is whether § 1334(e)(1) mandates the Bankruptcy Court serve as the forum to adjudicate the State Law Claims. Just because the Bankruptcy Court had, and has, exclusive jurisdiction of property of McIntyre's bankruptcy estate under § 1334(e)(1) does not mean it had, and has, exclusive jurisdiction of civil proceedings concerning property of the bankruptcy estate. While § 1334(e)(1) establishes *in rem* jurisdiction of bankruptcy courts over property of the bankruptcy estate, it does not "negate the provisions of 28 U.S.C. § 1334(b) that grant the bankruptcy courts original *but not exclusive jurisdiction of civil proceedings* 'arising under title 11, or arising in or related to cases under title 11.'"[58]

Here, the Adversary Proceeding sought to relitigate the State Law Claims, *i.e.* essentially the same prepetition claims McIntyre asserted and lost in the State Court Action. Nothing precluded the Bankruptcy Court from deferring to the State Court Action to finally resolve the State Law Claims, which are entirely reliant on Colorado state law

---

[57] *Id.* at 579.

[58] *Fieldturf USA, Inc. v. Astroturf, LLC (In re Astroturf, LLC)*, No. 16-41504-PWB, 2017 WL 1194649, at *10 (Bankr. N.D. Ga. Mar. 30, 2017) (unpublished) (citing *Noletto v. Nationsbanc Mortg. Corp. (In re Noletto)*, 244 B.R. 845 (Bankr. S. D. Ala. 2000)) (emphasis added).

for their existence and their resolution.[59] Because neither McIntyre nor any other interested party seeks a determination on whether the claims are property of the bankruptcy estate, and no party raised that such claims are not property of McIntyre's bankruptcy estate, we conclude § 1334(e)(1) does not mandate the Bankruptcy Court hear the State Law Claims to the exclusion of the state court.

B.  *The Bankruptcy Court did not abuse its discretion by abstaining from adjudicating the State Law Claims and Claim Objection.*

i.  The State Law Claims

Even if a bankruptcy court concludes subject matter jurisdiction exists over state law claims, the bankruptcy court may abstain from hearing a proceeding in certain circumstances.[60] Section 1334(c)(1) authorizes discretionary abstention, providing "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."[61] Courts apply the following factors in analyzing whether to use their discretion to abstain from hearing and determining a matter:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law, (4) the presences of a related

---

[59] *Cf. In re Dynamic Drywall, Inc.*, No. 14-11131, 2015 WL 4497967 (Bankr. D. Kan. July 21, 2015) (unpublished), *report and recommendation adopted sub nom. Dynamic Drywall, Inc. v. McPherson Contractors, Inc.*, No. 6:15-CV-1229-JTM, 2015 WL 4744501 (D. Kan. Aug. 11, 2015) (unpublished).

[60] 28 U.S.C. § 1334(c)

[61] *Id.* § 1334(c)(1).

proceeding commenced in state court or other nonbankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the bankruptcy court's] docket, (10) the likelihood that commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presences in the proceeding of nondebtor parties.[62]

McIntyre argues the Bankruptcy Court erred in abstaining from hearing the State Law Claims because his claims are disputes over property of the estate and thus "core proceedings" conferring exclusive jurisdiction in the Bankruptcy Court over such claims. Appellees contend the Bankruptcy Court does not have "exclusive jurisdiction" and, while § 1334(b) confers original jurisdiction over all proceedings that arise under, arise in, or are related to a bankruptcy case, § 1334(c) authorizes a bankruptcy court to permissively abstain from both core and non-core matters out of respect for state law.[63]

The Bankruptcy Court concluded, even if it had subject matter jurisdiction over the State Law Claims, permissive abstention was warranted for the State Law Claims.

---

[62] *In re Ellicott Springs Res., LLC*, 485 B.R. 626, 640 (Bankr. D. Colo. 2013) (quoting *In re Schempp Real Estate, LLC*, 303 B.R. 866, 876 (Bankr. D. Colo. 2003)). *See also In re George Love Farming, LLC*, 438 B.R. 354, 2010 WL 813689, at *6 (10th Cir. BAP Mar. 9, 2010) (unpublished) (citing *In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 6 F.3d 1184, 1189 (7th Cir. 1993), *aff'd sub nom. In re George Love Farming, LC*, 420 F. App'x 788 (10th Cir. 2011).

[63] *In re Telluride Income Growth, L.P.*, 364 B.R. 390, 98 (10th Cir. BAP 2007) ("Section 1334(c)(1) permits abstention from core matters and non-core matters when it is in the 'interest of justice,' judicial economy, or respect for state law ('permissive abstention').").

17

The Bankruptcy Court reasoned there would be little effect on the efficient administration of McIntyre's bankruptcy estate if it abstained. Additionally, if McIntyre recovered in the State Court Action, he could then seek turnover of the proceeds in the Bankruptcy Case. The Bankruptcy Court also determined state law issues—based on well-settled Colorado law—predominated over the bankruptcy issues, with the State Law Claims predating McIntyre's bankruptcy filing.[64]

We conclude the Bankruptcy Court did not abuse its discretion in abstaining from hearing the State Law Claims. Section 1334(c) provides for discretionary abstention of both core and non-core proceedings. Thus, the Bankruptcy Court has discretion to abstain from hearing any proceeding arising under § 1334(b) jurisdiction out of comity for state courts and/or respect for state law. With the progression of the State Court Action, the pending appeal thereof in the Colorado courts, the judicial time and resources already expended by the Colorado courts on the State Law Claims, and the State Law Claims being based on Colorado law, the Bankruptcy Court did not abuse its discretion in abstaining from determining the State Law Claims and reducing the Receivable to judgment and allowing the State Court Action to conclude to final judgment. Stated otherwise, there is simply no indication the Bankruptcy Court made "a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."[65]

---

[64] January 14, 2020 Order at 6, *in* Appellant's App. at 217.

[65] *In re Westby*, 486 B.R. 509, 515 (10th Cir. BAP 2013).

ii.  The Claim Objection

McIntyre asserts the Bankruptcy Court must exercise jurisdiction over the Claim Objection under § 1334(e)(1) because the Claim Objection is a core proceeding. McIntyre also argues the Bankruptcy Court erred by choosing to wait two years to dismiss the Claim Objection because it deprived this Court and the Tenth Circuit Court of Appeals of "jurisdiction to rule on the merits when McIntyre first appealed the abstention."[66]

We disagree. Although the Claim Objection is a core proceeding, the Bankruptcy Court, focusing on substance rather than form, dismissed it because it was "simply a reassertion of the [State Law Claims] the Court [had] already abstained from hearing[.]"[67] As discussed above, the Bankruptcy Court may abstain from hearing not only non-core matters, but also core proceedings, including claim objections, in the interest of state comity and respect for state law.[68] Given the state law issues underlying the Claim

---

[66] Appellant Opening Br. 27. McIntyre's contention that the Bankruptcy Court erred by waiting two years to dismiss the Claim Objection has no merit. The Bankruptcy Court dismissed the Claim Objection under abstention principles and without prejudice based on the discretion afforded the Bankruptcy Court to abstain under § 1334(c).

[67] The Final Order at 1–2, *in* Appellant's App. at 254–55.

[68] 28 U.S.C. § 1334(c)(3). *See also United States v. Bagley (In re Murdock Mach. & Eng'g Co. of Utah)*, 990 F.2d 567, 572 (10th Cir. 1993) (in claim allowance process, where a specialized forum or administrative agency has been entrusted with authority to liquidate claims such as those before the bankruptcy court, the bankruptcy court usually should defer to that forum); *Hanson v. HSBC Bank, USA (In re Hanson)*, 525 B.R. 791, 796 (Bankr. M.D. Fla. 2015) (court abstained from hearing count in adversary proceeding that was an objection to a proof of claim as objection was based entirely on state law that could be resolved in foreclosure action pending when bankruptcy case was filed); *In re BFW Liquidation, LLC,* 459 B.R. 757, 779–80 (Bankr. N.D. Ala. 2011) (court abstained

Objection, as well as the time and resources expended by the Colorado courts on the State Law Claims, the dismissal of the Claim Objection without prejudice, and the discretion afforded the Bankruptcy Court to abstain, even in core matters, the Bankruptcy Court did not abuse its discretion in doing so.

## V.    Conclusion

The Bankruptcy Court erred in holding that it did not have related to jurisdiction over the State Law Claims. Even so, we conclude that error was harmless, and the Bankruptcy Court did not abuse its discretion by abstaining from hearing both the State Law Claims and the Claim Objection. Accordingly, the judgment is AFFIRMED.

---

from hearing debtor's objection to proof of claim to allow the extent of withdrawal liability to be resolved through arbitration).